**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,  )<br>      Plaintiff,                              )<br>                                                    )<br> v.                                               )<br>                                                    )<br> MHM HEALTH PROFESSIONALS,   )<br> INC., and MASSACHUSETTS        )<br> PARTNERSHIP FOR CORRECTIONAL  )<br> HEALTHCARE, LLC,                      )<br>      Defendants.                           ) | CIVIL ACTION NO.: _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Evanston Insurance Company states the following as its Complaint for Declaratory Judgment against Massachusetts Partnership for Correctional Healthcare, LLC and MHM Health Professionals, Inc.:

**I.  The Parties**

1.      Plaintiff Evanston Insurance Company is an Illinois corporation with its principal place of business in Illinois.

2.      Defendant MHM Health Professionals, Inc. ("MHM Health") is a Delaware corporation with its principal place of business in Vienna, Virginia.

3.      Defendant Massachusetts Partnership for Correctional Healthcare, LLC ("MPCH") is, or was, a Massachusetts limited liability company with its principal place of business in Massachusetts and which is or was owned by MHM Health Correctional Services, Inc., a Delaware corporation with its principal place of business in Vienna, Virginia, and Centene Corporation, a Delaware corporation with its principal place of business in St. Louis, Missouri, via their jointly held entity, Centurion, LLC, a

Delaware limited liability company with its principal place of business in St. Louis, Missouri.

4.      Upon information and belief, MPCH filed a Certificate of Cancellation with the Secretary of the Commonwealth of Massachusetts to be effective January 1, 2019.

## II. <u>Jurisdiction and Venue</u>

5.      This declaratory judgment action is brought pursuant to 28 U.S.C. § 2201 seeking a declaration of the rights and obligations of Evanston under the Locum Tenens and Contract Staffing Policy No. MM825620, issued by Evanston to MHM Health for the policy period of July 1, 2015 to July 1, 2016 (the "Policy").

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because the citizenship of Evanston is diverse from that of each defendant, both of whom claim rights and interests under the Policy, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the Policy was issued to MHM Health and MPCH in Vienna, Virginia. The underlying claim was settled by one or both of the defendants and the current controversy solely involves their claim for indemnity under the insurance policy issued to them in Vienna, Virginia. Therefore, a substantial part of the relevant actions in connection with this Complaint for Declaratory Judgment took place within this District.

8.      Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) and (3) because MHM Health maintains its principal office in Vienna, Virginia.

### III. Statement of Facts

9.     This declaratory judgment action arises out of MPCH and MHM Health's insurance coverage demands following the death of Leo Marino, an inmate at the Bridgewater State Hospital in Bridgewater, Massachusetts.

10.     Mr. Marino was an inmate transferred to Bridgewater State Hospital in October 2015.

11.     Mr. Marino had significant psychiatric problems and was diagnosed with major depressive disorder with psychotic features.

12.     While at Bridgewater, he was treated by doctors and social workers employed by MPCH. He committed suicide at Bridgewater on April 6, 2016.

13.     In April 2018 MPCH and MHM Health tendered to Evanston a wrongful death claim made by the Estate of Leo Marino.

### A.     The Policy

14.     Evanston issued the Policy to MHM Health. MPCH was added to the Policy as a named insured by endorsement form MELT 2212 07 11. The limits of coverage are $2,000,000/$6,000,000. The self-insured retention is $100,000 per claim. All of the terms of the Policy are incorporated herein by reference. [1]

15.     The Policy is comprised of two parts, Locum Tenens and Contract Staffing Professional Liability Insurance - Claims Made Coverage (the "Professional Liability Coverage Part") and Locum Tenens And Contract Staffing General Liability Insurance (Including Products And Completed Operations Liability) – Occurrence Coverage (the "General Liability Coverage Part").

---

[1] The Policy is attached hereto as Exhibit 1.

1.      **Professional Liability Coverage Part**

16.      The Insuring Agreement for the Professional Liability Coverage Part provides:

   **A. Professional Liability and Claims Made Clause:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount . . . which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision:

   1. Under Coverage A. Individual Professional Liability: because of Malpractice or Professional Personal Injury, sustained by a patient and committed by the Coverage A. Insured, or by any person for whose Malpractice or Professional Personal Injury the Coverage A. Insured is legally responsible, except as a member, stockholder or partner of an association, corporation, partnership or limited liability company, arising out of the conduct of the Insured's Medical Services;

   2. Under Coverage B. Organization Liability: because of Malpractice or Professional Personal Injury, sustained by a patient and committed by any person for whom the Coverage B. Named Insured is legally responsible, arising out of the conduct of the Insured's Professional Healthcare Services;

   . . . .[2]

17.      The Self-Insured Retention Endorsement amends the coverage available under the Professional Liability Part and provides:

   3. Section Limits of Liability G., Deductible, is deleted and replaced with the following:

   **G. Self-Insured Retention:** The Self-Insured Retention amount stated in the Declarations [$100,000] shall be paid by the Coverage B. Named Insured and shall be applicable to each Claim and shall include Damages

---

[2]  Ex. 1 at MELT 0001 07 11, p. 2.

and Claim Expenses, whether or not Damages payments are made.

. . . .

Subject to Section Limits of Liability, the Company shall be liable for only such Damages and Claim Expenses, which are in excess of the Self-Insured Retention. The payment of the Self-Insured Retention is a condition precedent to the Insured's right to the protection afforded by this policy.

4. Section Defense, Settlements and Claim Expenses A. is deleted and replaced with the following:

**A. Defense, Investigation and Settlement of Claims:** It shall be the duty of [the Named Insured's third-party administrator] . . . at the . . . Named Insured's own expense to defend, investigate and settle any Claim . . . seeking Damages to which this insurance applies which is within the Self-Insured Retention.

. . . .

Upon exhaustion and payment of the Self-Insured Retention, the Company shall have the right and duty to defend and investigate any Claim to which coverage under this Coverage Part applies . . . .
. . . .[3]

**2.     General Liability Coverage Part**

18.     The Insuring Agreement for the General Liability Coverage Part provides:

**A. Coverage A. - Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims made against the Insured and reported to the Company pursuant to Section Claim Reporting Provision, for Bodily Injury or Property Damage caused by an Occurrence, provided:

1. The entirety of the Bodily Injury or Property Damage and Occurrence happens during the Policy Period;

---

[3] Ex. 1 at MELT 2220 09 12, pp. 1-2.

2.  Such Bodily Injury or Property Damage arises out of only those Specified Products, Goods, Operations or Premises stated in the Declarations;

. . . .[4]

19.     The General Liability Coverage Part expressly excludes coverage for: "Any Claim based upon or arising out of the rendering of or failure to render services of a professional nature by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible[.]"[5]

### 3.     Common Policy Conditions

20.     The Policy contains several pertinent Common Policy Conditions.

21.     The "Other Insurance" provision provides:

**D. OTHER INSURANCE**

This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.[6]

22.     The cooperation clause provides:

**H. ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with the Company and upon the Company's request, the Insured shall:

. . . .

---

[4] Ex. 1 at MELT 0003 07 12, p. 3.
[5] *Id*., p. 8.
[6] *Id.,* p. 1.

3. Assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits;

. . . .

All without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company.[7]

23.    The "no-action" clause provides:

### K. ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.[8]

**B.    The Claim**

24.    On March 29, 2018, Dawn Marino, as Personal Representative of the Estate of Leo Marino, presented a Notice of Claim pursuant to M.G.L., c. 231, § 60L(g), to MPCH for its alleged role in the death of Mr. Marino (the "Claim").[9]

25.    The Claim alleges in pertinent part:

APPLICABLE STANDARD OF CARE FOR THE CLAIM

The defendants, Dr. Robison, Dr. Meyers and Dr. Barnett, were required to adhere to the standard of care of the average qualified psychiatrist.

The defendants, Ms. Leite and Ms. West, were required to adhere to the standard of the average qualified social worker.

---

[7]  Ex. 1 at MELT 2200 07 11, p. 2.
[8]  *Id.*, p. 3.
[9]  A copy of the Notice of Claim dated March 29, 2018, is attached hereto as Exhibit 2.

## DEVIATIONS FROM THE STANDARD OF CARE, ACTIONS THAT SHOULD HAVE BEEN FOLLOWED TO ENSURE COMPLIANCE WITH STANDARD OF CARE

The following will set forth the defendants' deviations from the standard of care, the actions that should have be completed to ensure compliance with the standard and causation between the deviations and Mr. Marino's death.

1. Failed to formulate a differential diagnosis to ensure appropriate treatment;

   . . . .

2. Failed to review the relevant documents pertaining to patient behavior;

   . . . .

3. Failed to adequately assess the patient;

   . . . .

4. Failed to identify social and environmental factors relevant to immediate treatment decisions;

   . . . .

5. Failed to determine whether the patient is able and willing to form an alliance to support further assessment/treatment;

   . . . .

6. Failed to recognize correctional suicide risk factors including: hopelessness, negative appraisal of legal situation, lack of mitigating social supports (family), and placement into isolation;

   . . . .

7. Failed to recognize general suicide risk factors including: hopelessness, previous near lethal attempt, efforts to avoid detection, persistent intent, male, severe agitation, poor judgment, and psychosis;

   . . . .

8. Failed to determine the patient's thoughts about previous suicide attempts;

   . . . .

9. Failed to attend to patient safely:

   . . . .

10. Failed to determine the precipitation factors and the timing of each suicide attempt;

. . . .

11. Failed to appreciate psychosocial strengths and vulnerabilities of the patient.

. . . .

12. Failed to use ECT for treatment of refractory depression and/or psychosis (he had been offered ECT in 2/20 16 but declined. By April, he was. Requesting ECT).

. . . .

13. Failed to provide therapy to patient in restraint pursuant to G.L. c. 123, section 21;

. . . .

14. Failed to adhere to Department of Corrections regulations regarding the use of 4 point restraints;

. . . .

15. Failed to appreciate impact on untimely tapering of medication;

. . . .

## CAUSATION

According to the deviations noted above on behalf of Dr. Robison, Dr. Meyers, Dr. Barnett, Ms. Leite and Ms. West, had Mr. Marino received care consistent .with the applicable standards of care of the average qualified psychiatrist and/or social worker, he would have most likely not experienced a decline in his condition, increased suicidal ideation, increased self-injurious behaviors, and he would not have gone on to suicide completion.

26.     MPCH forwarded the Claim to Evanston.

27.     Initially, Evanston declined coverage for the Claim on the grounds the claim was made after the Policy's expiration.

28.     On or about December 13, 2018, Evanston withdrew its previous coverage declination and advised it would defend MPCH and MHM Health against the Claim in light of the December 3, 2018 discovery of a report dated June 30, 2016, which included information about Mr. Marino's death among 372 other potential or pending claims.

9

29.     Evanston agreed to participate in a pre-suit mediation on December 18, 2018, as part of its defense of MPCH against the Claim.

30.     During the mediation, Evanston made settlement offers to the Estate. However, Evanston declined to pay a $2.0 million demand to settle the case in light of the available information concerning MPCH's liability and the Estate's damages, particularly information contained in the pre-mediation evaluation(s) authored by MPCH's own counsel.

31.     Following the mediation, MPCH and MHM Health demanded Evanston accept a time-limited demand of $2.0 million to settle the Claim; Evanston declined.

32.     MPCH and/or MHM Health then voluntarily settled the Claim and paid or agreed to pay $1.8 million to the Marino Estate without Evanston's consent.

33.     Despite the voluntary nature of MPCH and MHM Health's settlement of the Claim, MPCH and/or MHM Health contend Evanston should reimburse them for the amount of the settlement.

34.     Evanston denies it owes MPCH or MHM Health indemnity for the voluntary settlement and Evanston now seeks a declaration of its rights, duties, and obligations under the Policy, if any.

## COUNT I
### Declaration Evanston is not Required to Indemnify
### <u>Defendants for Their Voluntary Settlement of the Claim</u>

35.     Evanston incorporates the previous paragraphs by this reference.

36.     A dispute exists between the parties concerning the parties' rights, duties, and obligations, if any, under the Policy with respect to indemnity for MPCH's and MHM Health's settlement with the Estate.

37.     Evanston agreed to defend MPCH against the Claim subject to the terms of the Policy.

38.     Subsequently, MPCH and/or MHM Health, without Evanston's consent, settled the Claim.

39.     Despite the fact MPCH and/or MHM Health voluntarily settled the Claim without Evanston's consent, MPCH and MHM Health contend Evanston should reimburse them for the amount they paid or agreed to pay.

40.     The Policy's cooperation clause provides, in part: "[t]he Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the [Evanston]."[10] Evanston's written consent was never given.

41.     The voluntary payment doctrine also applies to prevent MPCH or MHM Health from recovering from Evanston for any payment they voluntarily made to the Marino Estate.

42.     Evanston is not obligated to indemnify MPCH or MHM Health with respect to the Claim.

## COUNT II
### Alternatively, Declaration Evanston's Policy is Excess

43.     Evanston incorporates the preceding paragraphs by this reference.

44.     On information and belief, there is other valid and collectible insurance available to MPCH and/or MHM Health.

---

[10] Ex. 1 at MELT 2200 07 11, p. 2.

45.     The Policy provides:

### D. OTHER INSURANCE

> This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.[11]

46.     Therefore, the Policy is excess over other coverage available to MPCH and/or MHM Health with respect to the Claim.

WHEREFORE, Evanston Insurance Company respectfully requests that this Honorable Court declare and adjudge the controversy as follows:

A.     Declare Evanston has no obligation to indemnify MPCH or MHM Health with respect to its or their settlement of the Claim;

B.     Alternatively, declare Evanston's Policy is excess over any other insurance available to MPCH or MHM Health with respect to the Claim; and

C.     Grant any other relief that the Court deems just and equitable under the circumstances.

**EVANSTON INSURANCE COMPANY**


By:   ___/s/ *Thomas S. Garrett*_____

---

[11] *Id.*, p. 1.

John M. Claytor (VSB No: 18629)
Thomas S. Garrett (VSB No:  73790)
Harman Claytor Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
Phone:  (804) 747-5200
Fax:  (804) 747-6085
jclaytor@hccw.com
tgarrett@hccw.com
*Counsel for Evanston Insurance Company*